AF Approval *KL for NMA*                                        Chief Approval *MPF*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                             CASE NO. 6:25-cr-19-AGM-LHP

JERRY SMITH

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory W. Kehoe, United States Attorney for the Middle District of Florida, and the defendant, JERRY SMITH, and the attorney for the defendant, Katherine Puzone, Esq., mutually agree as follows:

### A.  Particularized Terms

1.  Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment. Count One charges the defendant with receipt of stolen government money or property, in violation of 18 U.S.C. § 641.

2.  Maximum Penalties

Count One carries a maximum sentence of not more than ten years of imprisonment; a fine of not more than $250,000, or the greater of twice the gross gain or twice the gross loss caused by the offense; a term of supervised release of not more than three years; and a special assessment of $100.

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the

Defendant's Initials _____

Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3. Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which the defendant has been charged and to which the defendant is pleading guilty.

The elements of Count One are:

First:       The defendant knowingly received, concealed, or retained money or property of value;

Second:      The money or property belonged to the United States;

Third:       The defendant knew that the money or property had been embezzled, stolen, or converted;

Fourth:      The defendant intended to convert the money or property to his own use or gain; and

Fifth:       The value of the money or property was more than $1,000.

4. No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge the defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials _____    2

5.    Mandatory Restitution to Victim of Offenses of Conviction

Pursuant to 18 U.S.C. § 3663A(a) and (b), the defendant agrees to make full restitution to the Department of Veterans Affairs.

6.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.    Chapter Two Offense Level – Joint Recommendation

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States and the defendant agree to jointly recommend to the Court that the defendant's Chapter Two offense level be calculated at 16 pursuant to USSG §2B1.1 as follows:

| USSG §2B1.1(a)(2) | Base Offense Level | 6 |
| USSG §2B1.1(b)(1)(F) | Loss of Over $150,000 | 10 |

The parties understand that such a joint recommendation is not binding on the Court, and if not accepted by this Court, neither the United States nor the

Defendant's Initials _____    3

defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    Acceptance of Responsibility – Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level.  The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _____    4

9. Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

10. Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 982(a)(2)(B) and 1029(c)(1)(C), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the $$244,953.70 in proceeds the defendant admits he obtained, as the result of the commission of the offenses to which the defendant is pleading guilty. The defendant acknowledges and agrees that: (1) the defendant obtained this amount as a result of the commission of the offenses, and (2) as a result of the acts and omissions of the defendant, the proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence. Therefore, the defendant agrees that, pursuant to 21 U.S.C. § 853(p), the United States is entitled to forfeit any other property of the defendant (substitute assets), up to the amount of proceeds the defendant obtained,

Defendant's Initials _____

5

as the result of the offenses of conviction. The defendant further consents to, and agrees not to oppose, any motion for substitute assets filed by the United States up to the amount of proceeds obtained from commission of the offenses and consents to the entry of the forfeiture order into the Treasury Offset Program. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant additionally agrees that since the criminal proceeds have been transferred to third parties and cannot be located by the United States upon the exercise of due diligence, the preliminary and final orders of forfeiture should authorize the United States Attorney's Office to conduct discovery (including depositions, interrogatories, requests for production of documents, and the issuance of subpoenas), pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, to help identify, locate, and forfeit substitute assets.

The defendant also agrees to waive all constitutional, statutory, and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the

Defendant's Initials _____

6

defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

Defendant's Initials _____   7

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing. In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including the forfeiture of any substitute assets, is final.

Defendant's Initials _JH_                    8

**B.**   **Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied. On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

2.   Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from

Defendant's Initials _____   9

imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in

Defendant's Initials _____          10

which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court,

Defendant's Initials _____     11

with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

Defendant's Initials _____        12

8.    <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that

Defendant's Initials _____    13

defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    <u>Factual Basis</u>

The defendant is pleading guilty because the defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no

Defendant's Initials _____    14

other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that the defendant fully understands its terms.

DATED this __21__ day of ~~February~~ April, 2026.

GREGORY W. KEHOE
United States Attorney

_____
JERRY SMITH
Defendant

_____
Katherine Puzone, Esq.
Attorney for Defendant
FBN 94491

for Diane S. Hu
Assistant United States Attorney

for Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

Defendant's Initials _JJ A_                    15

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:25-cr-19-AGM-LHP

JERRY SMITH

PERSONALIZATION OF ELEMENTS

**Count One: Receipt of Stolen Government Money or Property**

First:      Did you knowingly receive, conceal, or retain money or property
            of value?

Second:     Did the money or property belong to the United States?

Third:      Did you know that the money or property had been embezzled,
            stolen, or converted?

Fourth:     Did you intend to convert the money or property to your own
            use or gain?

Fifth:      Was the value of the money or property more than $1,000?

Defendant's Initials _____                 16

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 6:25-cr-19-AGM-LHP

JERRY SMITH

## FACTUAL BASIS

JERRY SMITH, a resident of New Smyrna Beach, Florida, falsely represented to the United States Department of Veterans Affairs ("VA") that he was legally blind and that his vision conditions prevented him from driving, working, and performing various daily functions. As a result, SMITH knowingly received stolen disability compensation benefits from the VA, with the intention of converting those funds for his own use and gain.

In reality, SMITH's vision was significantly better than what he represented to the VA during VA eye examinations and his statements to the VA. Records, interviews, and surveillance footage beginning in 2017 showed that SMITH could drive, read, navigate around people and obstacles in stores, conduct transactions at cash registers and drive-through ATMs, and that SMITH worked as a firearms specialist and school guardian.

From January 2017 through July 2021, SMITH received a total of $244,953.70 in disability benefits from the VA.

Defendant's Initials _____        17

## I.  Background

Visual acuity refers to one's sharpness or clarity of vision, and rates a patient's ability to recognize and discern small details, such as letters or numbers, from a particular distance.  It is tested in each eye separately.  A standard Snellen chart is frequently used to test visual acuity, and is usually done at a distance of 20 feet.  If one's vision is equivalent to that of the normal average person, their vision is considered 20/20.  This means that one can see at 20 feet what an average person can see at 20 feet.  If one's vision is 20/60, for example, that means that one can only see at 20 feet what an average person can see at 60 feet.

Legal blindness is defined as a person with a visual acuity of 20/200 or worse in the better eye with optical correction, such as glasses or contact lenses.  When visual acuity can be measured in numbers (e.g. 20/400), that means the patient is able to identify letters on the Snellen eye chart.  When a patient cannot read the top line of the Snellen chart, a patient can move closer to the chart, such as 10 feet away.  If the patient can only read the top line at 10 feet, their vision is recorded as 10/200.

If the patient cannot see anything on the Snellen chart, the examiner tests whether the patient can count fingers at a particular distance by placing one or two fingers in front of the patient.  If the patient is unable to count fingers, the examiner tests whether the patient can detect hand movement by waving a hand in front of the patient (and if so, at what distance).  If the patient is unable to detect hand movement, the examiner tests whether the patient has light perception by shining a bright light on the patient's eye and seeing if the patient can perceive the light.

Defendant's Initials _____                18

Visual acuity is a subjective measurement because it relies on the patient to tell the examiner whether he can see a given letter.

## II.    SMITH's Representations to the VA

SMITH served in the U.S. Air Force for approximately five months, from June 8, 1970 to November 30, 1970. On August 24, 1970, while serving in the U.S. Air Force, SMITH reported blurring of his vision after light exposure during arc welding. On December 16, 1970, SMITH submitted a claim for VA disability compensation based on his vision issues.

As shown in the table below, between 1970 and 2021, SMITH's visual acuity, as reported during VA eye clinic examinations, varied significantly over time but was largely consistent with legal blindness. Notably, however, on November 18, 2018, SMITH went to Target Optical, a *non-VA* medical center, for an eye examination for the purpose of obtaining bifocal shooting glasses. SMITH was examined by a non-VA physician, and SMITH's best-corrected vision was 20/30 in his right eye and 20/25 in his left eye, i.e., near-perfect vision. SMITH thus misrepresented his vision to the VA during his VA eye examinations.

| Date | Right Eye | Left Eye |
|---|---|---|
| October 30, 1970 | 10/200 | 20/100 |
| September 25, 1971 | 20/200 | 20/70 |
| February 5, 1983 | 20/400 | Counting fingers at ten feet |
| April 7, 1983 | 20/400 | Counting fingers at four feet |
| March 26, 2001 | Counting fingers | Counting fingers |
| June 6, 2002 | Counting fingers | Counting fingers |

Defendant's Initials _____    19

| June 2, 2003 | Counting fingers at two feet | Counting fingers at two feet |
|---|---|---|
| May 13, 2004 | Counting fingers at one foot | Counting fingers at one foot |
| May 12, 2005 | Hand motion only | Hand motion only |
| July 27, 2005 | Hand motion only | Hand motion only |
| August 11, 2005 | Counting fingers at ten inches | Counting fingers at ten inches |
| August 11, 2006 | Counting fingers at two feet | Counting fingers at three feet |
| August 14, 2007 | Counting fingers at two feet | Counting fingers at one foot |
| October 6, 2008 | Counting fingers at two feet | Counting fingers at two feet |
| June 5, 2009 | Counting fingers at two feet | Counting fingers at two feet |
| July 30, 2009 | Counting fingers at two feet | Counting fingers at two feet |
| April 7, 2011 | Counting fingers at two feet | Counting fingers at two feet |
| April 10, 2012 | Counting fingers at two feet | Counting fingers at six inches |
| May 9, 2013 | 20/400 | 20/400 |
| June 10, 2014 | 20/400 | 20/400 |
| June 15, 2015 | Counting fingers at five feet | Counting fingers at five feet |
| June 17, 2016 | 20/200 | 20/200 |
| June 19, 2017 | 20/200 | 20/200 |
| June 19, 2018 | 20/200 | 20/200 |
| **November 18, 2018 (*non-VA* eye examination at Target Optical)** | **20/30** | **20/25** |
| June 19, 2019 | 20/200 | 20/100 |
| June 24, 2020 | 20/100 | 20/80 |
| July 7, 2020 | 20/400 | 20/400 |
| February 22, 2021 | 20/200 | 20/200 |
| April 29, 2021 | 20/200 | 20/200 |

On May 28, 2004, SMITH submitted to the VA a written statement in support of his claim for benefits, which stated, "Please make sure that I am receiving

Defendant's Initials _____    20

maximum VA benefits. I am 100% SC [service-connected] for blindness in both eyes and my VA [visual acuity] is CF [counting fingers] @ 2' OD [right eye] and CF @ 2' OS [left eye]. See attached eye exams of 6/2/03 and 5/13/04."

On June 1, 2005, Smith submitted to the VA a written statement in support of claim to the VA, which stated,

> I was aware that I was at 100% and rec. benefits for wife and daughter. Since that rating my condition has worsened. I was able to use some of the visual aids by themselves. Now I have to use combinations of them such as 6x glasses with the T.U. system. I have to enlarge things. However some are not possible. I was able to count fingers at a few feet. Now the fuzzy areas have gotten worse and I can't do that. I rely on picking up movement. I am unable to read as I did before large print with either the 6x glasses of the CATV. Now I use a combination of both. My condition requires me to get assistance for most tasks. I can't perform chores that I once could, such as repairs, grass cutting, and many others. This makes paying bills hard when you have to pay people for things. Last year's hurricane wiped out our savings both getting ready and damages after. I do receive Social Security benefits however it is very minimal. I receive $587.00 a month for me and only $265.00 a month for my daughter. This amount is low because for 16 yrs I worked for the Postal Service in management. However I had to resign in 1990 because I could no longer do my job because of my eyes. At that time I was not old enough to retire. So I had to cash out my retirement funds. 3 years later I was forced to file bankruptcy and we lost our house and everything else. At that time I was not rated a 100% that came many years later. I tried several jobs but none would last. I quit because of my condition. Had I stayed with the Post Office I would have retired in 2008 and would have received approx. 4800.00 month in benefits and that was using my base salary of 1990. It would have been more I am sure . . . I was only questioning as to whether or not there were any additional benefits available to me because of the severity of my condition. Being blind is severe and possibly the worst to live with. It's hard to go through life not being able to see things as you once could. I am to a point where it is affecting my family life. I request that if my records are reviewed that a representative of the Disabled American Vets be present when my case is discussed. If there are any additional benefits and or grants that I am eligible for it would very much be appreciated.

Defendant's Initials _____          21

On May 9, 2019, VA OIG agents conducted a consensually monitored telephone call with SMITH. The agent who called SMITH represented himself as a VA employee calling to learn whether SMITH was receiving and satisfied with his veterans benefits and healthcare. During the call, SMITH described his vision as, "The central vision of my eye has deteriorated to where when I look directly at something, it's like you're not there. I can be sitting across from you, look at your face, and your face is not there." SMITH described it as "like putting a cloud over your face." He stated that he used extreme magnifiers when reading, a machine that "magnifies everything," and a "white mobility cane." SMITH also stated that his wife took him wherever he needed to go. He said he could not drive himself with his condition. SMITH said that he has always used his wife for transportation, and that he had not driven for "a long time." With respect to his VA disability compensation, SMITH stated that he was "thankful to get it." He said that he lived "payday to payday," and while he received Social Security benefits, "it's not much." SMITH stated that he could not prepare food because he cut and burned himself a lot, so his wife cooked for him. SMITH also stated that he could not shop and that his "wife does all that." He stated that if he went shopping with his wife, he hung onto the cart and "follows along" while his wife pulled the cart. Finally, SMITH stated that his vision condition was not something that gets better; rather, "it gets worse," "it's gotten worse over the years," and his vision has not improved since the onset.

On July 11, 2019, VA OIG agents interviewed SMITH at his residence. Before the interview, agents observed SMITH drive a vehicle and back into his

Defendant's Initials _____    22

driveway, and then use a key to open his mailbox. At the beginning of the interview, both agents presented their agency-issued credentials, and SMITH appeared to review them without mentioning any difficulty with his vision. When asked about driving, SMITH stated that he drove a vehicle and had done so for "quite a while." When asked why he sought to pay for glasses from a private optometrist at Target rather than obtain them for free from the VA, SMITH stated that he was only allowed one pair per year from the VA. SMITH stated that he presented his level of vision to the VA the same way that he presented his level of vision anywhere else. SMITH claimed that his vision was getting worse, and that objects were blurrier.

### III.    SMITH's Actual Vision Abilities

Beginning in 2017, agents and SMITH's co-workers observed SMITH driving, working, and performing other daily functions requiring the ability to see.

For example, between 2017 and 2018, SMITH worked as a firearms specialist at Bass Pro Shops in Daytona Beach, Florida. Agents interviewed a Bass Pro Shops Regional manager, who stated that SMITH was hired as a gun vault specialist, and his duties included the oversight of firearms and firearms processes, acquisitions, dispositions, and inventory, as well as the review of firearms transaction records. As part of his responsibilities, SMITH was required to read the serial numbers of weapons and other records. The manager stated that SMITH never mentioned any difficulties performing his job. The manager was unaware of SMITH having any vision issues (other than that SMITH wore glasses), and never observed SMITH using any other form of vision aids, such as a magnifying glass.

Defendant's Initials _____    23

Between 2018 and 2021, SMITH was employed by the Volusia County School District as a school guardian who was stationed at schools in the event of an active threat. Agents interviewed the head of the school guardian program, who stated that SMITH went through a school guardian training program that provided instruction on weapon handling, range safety, and firearms training. The head of the program stated that school guardians were issued Glock 19 Gen 5 9mm caliber firearms, and that to qualify for the position, school guardians were required to shoot two consecutive courses of fire with a score of at least 42 out of 48 rounds on target from distances of 25, 15, 7 and 3 yards. The head of the program stated that SMITH passed the shooting requirements on his first attempt. According to the head of the program, SMITH drove a truck, had no noticeable medical issues, did not use any visual aids other than glasses, and received no special accommodations. The head of the program stated that legal blindness would disqualify someone from being a school guardian.

Between 2018 and 2019, agents conducted surveillance and observed SMITH wearing glasses and making transactions at Bank of America drive-through ATMs. Surveillance footage from retail stores like Dick's Sporting Goods, Lowe's, and Walmart shows SMITH walking down aisles unassisted, pushing a shopping cart unassisted, navigating around obstacles and other people without difficulty and without a walking aid, approaching the cash register, using a point-of-sale machine, reading labels on products, and driving his vehicle in the parking lot. And surveillance footage from Spruce Creek High School in Port Orange, Florida shows

Defendant's Initials _JLS_                    24

SMITH working as a school guardian, walking through a school cafeteria and hallway while reading papers in his hand, and standing and observing students and parents walking into the school.

*     *     *

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case.  It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

Defendant's Initials _____        25